FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA** 17  AM II: 56
**SOUTHERN DIVISION**
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **DELE ATANE,** | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ] CV-96-N-0518-S |
| | ] |
| **UNIVERSITY OF ALABAMA AT** | ] |
| **BIRMINGHAM, et al.,** | ] |
| | ] |
| Defendant(s). | ] |

ENTERED

JUN 17 1997

## Memorandum of Opinion

The above-entitled civil action is before the court on the motion for summary

judgment filed by defendants University of Alabama Health Services Foundation, P.C.

(UAHSF) and Dr. Paul Wilton, Director of Podiatric Services at the UAHSF Kirklin Clinic, in

his official capacity. All briefs and evidentiary material in support of and in opposition to

the motion for summary judgment have been submitted by the parties and the motion is

now ready for decision. It is noted that defendants have submitted additional evidentiary

material with their reply to the plaintiff's response to the motion for summary judgment

[Doc. #25]. Exhibit D to the court's pretrial order specifically prohibits the submission of

additional evidentiary material with the reply and advises that any submission not

comporting with the requirements of Exhibit D will be stricken. Because the supplemental

evidentiary material is prohibited by Exhibit D to the pretrial order, it is **ORDERED** that

Document #25, Defendants' Submission of Evidence in Support of Their Reply Submission

in Response to Exhibit "D" of the Court's Order, is due to be and is hereby **STRICKEN** from

the record in this action.

## PROCEDURAL BACKGROUND

Plaintiff, Dele Atane, commenced this action by filing a complaint pursuant to Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and the Age Discrimination In Employment Act (ADEA), 29 U.S.C. §§ 216, *et seq.*, against defendants UAHSF and Dr. Paul D. Wilton, plaintiff's supervisor. He also asserts a claim pursuant to 42 U.S.C. § 1981.[1]  Mr. Atane alleges he was discriminated against in his employment, promotion, promotional opportunities, and other benefits of employment on account of his race, age, and national origin.  Defendants filed their answers, and discovery was undertaken by the parties.  Defendants filed their motion for summary judgment on March 3, 1997.  Plaintiff filed his response on March 18, and defendants filed their reply on March 24.

### Plaintiff's Assertions

Mr. Atane alleges he has been discriminated against on the basis of his age, race, and national origin with regard to the lead podiatry technician/group leader position.  He argues that he should have been promoted to that position because he had more experience and qualifications than Ms. Carlisle, had trained Ms. Carlisle, and was acknowledged by Dr. Wilton to be the best technician and assistant.  Mr. Atane states he

---

[1] Title 42 U.S.C. § 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

The elements and proof for a cause of action under § 1981 are identical to the elements of a Title VII claim. *Walters v. Atlanta*, 803 F.2d 1135 (11th Cir. 1986).

2

is a college graduate and is the only technician belonging to the American Society of Podiatric Medical Assistants Association. He stated in deposition he would have been willing to work full time for UAHSF to gain the lead technician job. Mr. Atane points to the fact that the position was not posted nor were any applications taken, assertedly in derogation of UAHSF policy. He contends defendants purposely refused to post or announce the position to deny him the opportunity to apply and compete for the job. Mr. Atane alleges the failure to post or announce the position and the promotion of a younger white person to the position, rather than older, more qualified black technicians, amounted to discrimination. He avers defendants' contention that Ms. Carlisle was merely reclassified to reflect her actual duties was a pretext for discrimination.

Plaintiff contends his academic and employment records show that he is more qualified than Debra Carlisle. He also avers his records and at least eight years of experience indicate that he is clearly qualified for a better-paying position but because of discrimination in promotion and advancement policies and practices, he has never been given the opportunity. Mr. Atane states in his position that he bases his age discrimination claim on the age difference between himself and Ms. Carlisle, the fact that he trained Ms. Carlisle, and his greater knowledge and experience in the podiatry field. He states his claim of national origin discrimination is based on his inability to comprehend why he was not given the lead podiatry technician job and his conclusion that he would have been named lead podiatry technician had he been born in the United States. He contends Dr. Wilton recommended Ms. Carlisle for the group leader position. Mr. Atane also asserts that as group leader, Ms. Carlisle exercises supervisory authority over himself and Ms.

3

Foster and is responsible for training new technicians. Dr. Wilton is alleged to have told Mr. Atane and Ms. Foster that they would be under Ms. Carlisle's control and supervision.

## Defendants' Assertions

Defendants contend that plaintiff has failed to establish a *prima facie* case of discrimination. First, they assert Ms. Carlisle's move to lead podiatry technician was a reclassification based on her actual duties. Second, it is contended Mr. Atane was not qualified to assume the responsibilities of lead technician because he was a part-time employee. It is argued that because plaintiff had previously expressed his unwillingness to work full time at the clinic unless he received compensation equal to or greater than $25,000 a year and the lead technician position did not pay that much, he would not have taken the job had it been offered to him. UAHSF refers to the fact that applications for the position were not sought within or outside the UAHSF system as evidence that Mr. Atane was not treated differently than employees in a non-protected class. UAHSF avers its reasons for not placing plaintiff in the lead technician position were clear, legitimate, and non-discriminatory. It asserts plaintiff has not come forward with any evidence that UAHSF's reasons were false or pretextual and its decision was motivated by a discriminatory animus.

According to Dr. Wilton's deposition, after Ms. Carlisle assumed Ms. Antonio's duties, Dr. Wilton decided she could do the job without supervision from him. He states he did not consider the educational backgrounds of Mr. Atane and Ms. Carlisle, but did consider work experience to some extent. Dr. Wilton denies that he specifically told Mr. Atane and Ms. Foster that Ms. Carlisle would supervise them and give them orders. Dr.

4

Wilton states Mr. Atane was not considered for the position because he was not a full-time employee. Another factor was Mr. Atane's expressed need for an income of at least $25,000 to work full time at the clinic; however, the group leader position did not pay that much.

According to the deposition of Jeannie Thomas, an employee in the Human Resources Department of UAHSF, Marjorie Cuckler asked that Ms. Carlisle's job description be reviewed after she undertook to perform Mr. Antonio's duties, to ensure she was properly classified. She was performing duties different from and in addition to those of a podiatry technician. Ms. Thomas assisted Ms. Carlisle in preparing an updated job description, and the form was provided to the manager of the compensation division to determine her appropriate title. Lori Eans, a UAHSF employee with oversight over classification, benefits, and compensation, states she was not asked to evaluate Ms. Carlisle's salary or benefits, only her job classification. After the review, the existing position held by Ms. Carlisle was reclassified to reflect her actual duties. UAHSF uses the Mercer classification system, in which the "lead" does not always suggest supervisory skills or tasks.

According to the deposition of Brian DePew, the group leader position was not a new or open position. It was in the interest of UAHSF to have Ms. Carlisle's position evaluated after she assumed additional responsibilities. The compensation division evaluated her duties to determine her proper title and classification. It was determined she was performing the job of a lead podiatry technician; therefore, she was reclassified accordingly. Mr. DePew stated when a person assumes additional responsibilities or

5

performs different duties in a position, the person's supervisor will generally ask for an analysis of the position and its duties to determine the person's new title and compensation. Mr. DePew explained that because the group leader position was not an open position, left by a vacancy or retirement or created, there was no posting or announcement. Because UAHSF did not consider lead podiatry technician to be a newly established position, the procedures for new established positions were not followed. After Ms. Carlisle's duties were evaluated and her position reclassified, she received a pay raise because she had taken on some supervisory duties.

According to the deposition of Jeanette Foster, Debra Carlisle assumed additional duties after Genevieve Antonio left. These duties included taking dictation and making appointments for surgery patients.

Marjorie Cuckler, as part of her contract for marketing and business management, was asked to review the Podiatry Department to make sure it had the correct number of employees and that the job description for each employee accurately reflected the actual duties. Ms. Carlisle prepared a list of her duties, which Dr. Wilton confirmed. Because Ms. Carlisle's duties did not match the job description for a podiatry technician, Ms. Cuckler sent the list "through channels" at UAHSF for guidance. She was advised to reclassify the position as lead podiatry technician. Ms. Cuckler denies that there was any urgency in processing Ms. Carlisle's form.

6

## FINDINGS OF FACT

The court finds the following facts to be established from the parties' submissions and the record.

Dele Atane is of Nigerian descent. He was born on June 20, 1955. Mr. Atane has been employed as a podiatry technician for UAHSF since April 24, 1987. He is under the supervision of Dr. Paul Wilton in the Kirklin Clinic. Mr. Atane worked full time until April 1993. In April 1993, he began working part time at the clinic and took a second job. His combined income from both part-time jobs exceeded his income from working full time at the Kirklin Clinic. Mr. Atane chose to work part time at the clinic so he could take a second job, for the purpose of increasing his total income. He refused an opportunity to become a full-time employee with UAHSF because of his salary requirements. Plaintiff informed Dr. Wilton he would be willing to work full time at the Kirklin Clinic if his salary would meet or exceed his combined income from his two part-time positions, at least $25,000 per year. Dr. Wilton considers Mr. Atane to be the best podiatry technician and his best assistant. He has requested that plaintiff be given a raise, but his requests have been denied.

Prior to May 5, 1995, Genevieve Antonio was employed as secretary and receptionist at the Kirklin Clinic. Her duties included answering the telephone, returning telephone calls, pulling and filing files and charts, making appointments for patients, and entering information on a computer. Ms. Antonio left the clinic prior to May 5, 1995. As of May 5, 1995, the podiatry technicians employed at the clinic were as follows:

7

| Name | Race | Experience | Hours |
|------|------|------------|-------|
| Dele Atane | Black | 10 years | part time |
| Jeanette Foster | Black | 27 years | full time |
| Debra Carlisle | White | 3 years | full time |

Mr. Atane trained Debra Carlisle, who was 25 years old in 1995. Ms. Carlisle's prior work experience included central appointments for UAHSF. According to the UAHSF job description, lead podiatry technician duties include:

1. Performs all the daily functions of a podiatry technician (55 percent)

2. Manages the daily operations of the clinic to include scheduling the podiatry technicians, coordinating time off and coverage, and, maintaining the podiatry medical record system to ensure the efficient operation of the clinic. (20 percent)

3. Provides the surgical patient with the necessary information and materials, maintains the office surgery schedule, and arranges for home health care when required. (10 percent)

4. Develops and maintains supply inventory to include determining appropriate "par" levels. (2 percent)

5. Manages telephone communications for Dr. Wilton on a daily basis. (5 percent)

6. Assists in the resolution of billing issues, by reviewing patient records, discussing with Dr. Wilton, technicians or with the patient or billing office. (1 percent)

7. Coordinates the radiological requirements of the clinic, to include preparing x-ray request forms, obtaining patient films from the various locations within the UAB\HSF complex. (1 percent)

8

      8.      Serves as liaison between the podiatry clinic, the orthopedic clinic, and administrative offices. (1 percent)

      9.      Monitors attendance policy and notifies supervisor of deviations. (5 percent)

After Ms. Antonio left, all the podiatry technicians assisted with answering the telephone, pulling and filing files and charts, and other clerical duties formerly performed by Ms. Antonio. Debra Carlisle, on her own initiative, took over the bulk of the clerical duties formerly performed by Ms. Antonio. Of the three technicians, only Debra Carlisle had any computer experience, and she was extremely familiar with UAHSF's system from her position in central appointments. On May 5, 1995, plaintiff was making $8.18 per hour. Prior to May 5, 1995, Debra Carlisle was making $6.90.

In March 1994, Marjorie Savas Cuckler had a contract for consulting services with UAHSF, specifically to the Division of Orthopedics, to do marketing and business management. As part of her work, Cuckler looked at the operation of the Department of Podiatry. In early 1995, the Department of Podiatry was reorganized into the Division of Orthopedics. On or about May 5, 1995, the Division of Orthopedics created or established a new lead podiatry technician/group leader position. Debra Carlisle became the lead podiatry technician/group leader on or about May 5, 1995, with a salary increase from Grade Level 7 to Grade Level 8. Because of the salary increase, the assignment to the position was considered a promotion. Ms. Carlisle took on clerical and administrative duties required to support the Department of Podiatry's operations. These duties include answering the telephone, making emergency appointments and appointments for walk-in

9

patients, pre-certifying and scheduling surgery, pulling charts for the next day's appointments and filing the previous day's charts. She performs the same functions as the secretary who resigned, and is called upon to serve as a podiatry technician only if another technician is ill or the workload is very heavy. At present, Ms. Carlisle's hourly rate is $8.26, and Mr. Atane's hourly rate is $8.69.

Mr. Atane timely filed a charge of discrimination based on race, age, and national origin with the Equal Employment Opportunity Commission (EEOC) on July 3, 1995. The EEOC found no probable cause as to the discrimination claims and issued a right to sue letter on November 30, 1995. Mr. Atane timely commenced this action by filing a complaint on February 27, 1996.

According to the amendment implemented on March 13, 1995, to the UAHSF internal and inter-departmental and transfer policy:

> New vacancies will be posted in the Kirklin Clinic on the first and second floors near the employee elevators in the display cases and in the Liberty National Building, First Floor. You may listen to current openings on the UAB Job Line at 4-2611, Option No. 7.
>
> For the first three working days only qualified internal candidates' applications will be forwarded to the hiring supervisors for consideration.
>
> Interested employees must meet the following criteria:
>
> *   Meets minimum qualifications for the position
> *   Six months or longer of employment with UAHSF in their present position
> *   No probationary or disciplinary action
> *   Not on extended leave

10

> Any employee who wishes to be considered for promotion or transfer must make application to the Office of Human Resources, LNB, First Floor or call 731-9610 for more information.

The policy provided that to fill a position at the Kirklin Clinic, "the supervisor must send a letter of resignation or documentation that the position is open to the Office of Human Resources. All requirements to fill the position will be handled through the employment office. If it is a new position that is needed for the clinic, a letter justifying the need for the new position must be sent to Barbara Mapstone and Steve Schultz for approval."

According to Brian DePew, Human Resources Manager, part-time employees are not considered eligible for supervisory positions because a supervisor must be present during all work hours. Lead workers must work full time. Mr. DePew avers he is unaware of any part-time UAHSF employee who has been considered for a lead worker position. The position of lead podiatry technician/group leader was not posted or announced nor were applications taken. In the position classification system at UAHSF, there is no job into which a lead podiatry technician can be promoted. Mr. Atane's salary, had he become lead podiatry technician, would not have reached nor exceeded $25,000.

## APPLICABLE LAW

### Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*,

11

477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id*. at 322-23; *see* Fed. R. Civ. P. 56(a) and (b). There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial, however he may not merely rest on his pleadings. *Id*. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

After a properly made motion has been properly responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is

12

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine wether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L.Ed.2d 277 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1989). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The

13

nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir.).

## ADEA

The ADEA prohibits an employer from discharging or otherwise discriminating against an employee on the basis of age, 29 U.S.C. § 623. Individuals who are at least 40 years of age, 29 U.S.C. § 631, may seek to establish a *prima facie* case in one of three ways: (1) by direct evidence of discriminatory intent; (2) by meeting the four-pronged test set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 688 (1973); or (3) through statistical proof. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).

### A. Direct Evidence.

In *Carter v. City of Miami*, the Eleventh Circuit stated that discriminatory remarks had to specifically show discriminatory intent. *Carter*, 870 F.2d at 582. The Eleventh Circuit has stated that "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination." *Carter*, 870 F.2d at 582. Comments that are merely inappropriate and condescending are not recognized as direct evidence. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 611 (11th Cir. 1987), *cert. denied*, 467 U.S. 1204, 104 S. Ct. 2385, 81 L. Ed. 2d 344 (1984). For example, the Eleventh Circuit has stated that direct evidence of a discriminatory nature existed where an experienced school principal and a superintendent of education testified "unequivocally" that racial motivation was present in the discharge of several school employees. *Lee v. Russell County Board of Education*, 684 F.2d 769

14

(1982). The Eleventh Circuit also found direct evidence of discrimination where a plaintiff and a union representative testified that an employer expressly stated that he refused to place the plaintiff in a certain job position because she was a woman. *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1553 (11th Cir. 1983), *cert. denied*, 467 U.S. 1204, 104 S. Ct. 2385, 81 L. Ed. 2d 344 (1984).

### B. The McDonnell Douglas Test

In the absence of direct evidence of discrimination, the court may utilize the framework established in *McDonnell Douglas Corp. v. Green* and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). First, the plaintiff bears the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination, *Burdine*, 450 U.S. at 253, which "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Id*. at 254. Second, if the plaintiff carries his initial burden, the burden shifts to the defendant to rebut the presumption by articulating "some legitimate reason" for the employment decision at issue. *Burdine*, 450 U.S. at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802). Finally, the plaintiff bears the burden of showing that the defendant's proffered reasons are pretextual or that discriminatory intent was more likely the cause of the employer's actions. *Burdine*, 450 U.S. at 253, 256. Presentation of a *prima facie* case creates a rebuttable presumption of discrimination, but it does not alone establish a genuine issue of material fact sufficient to go to the jury. *Carter*, 870 F.2d at 585. Because the plaintiff bears the burden of establishing pretext, once the defendant offers a legitimate, nondiscriminatory reason for an adverse employment action, the plaintiff must present significantly probative evidence

15

of the issue to avoid summary judgment. *Id.* The plaintiff at all times retains the ultimate

burden of persuading the trier of fact that the employer discriminated against the plaintiff.

*Burdine*, 450 U.S. at 253.

To establish a *prima facie* case under the ADEA with circumstantial evidence, a

plaintiff must prove: (1) that he is a member of the protected group; (2) that an adverse

employment action was taken against him, e.g. discharge, demotion, or failure to hire or

recall; (3) that the person hired was from outside the protected group; and (4) that he was

qualified for the position for which he was rejected. *Carter*, 870 F.2d at 582 (citations

omitted). The *prima facie* case requirement was "never intended to be rigid, mechanistic,

or ritualistic." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S. Ct. 2943, 57

L. Ed. 2d 597 (1978). However, "[a] *prima facie* case may be established only when there

is a basis for inferring that discrimination is the reason for the employment decision . . . "

*Pace v. Southern Railway System*, 701 F.2d 1383, 1390 (11th Cir.), *cert. denied*, 464 U.S.

1018, 104 S. Ct. 549, 78 L. Ed. 2d 724 (1983).

### C.  Statistical Evidence

It is noted that statistics "are of relatively low importance in an individual disparate

treatment case." *Gilty v. Village of Ozark Park*, 919 F.2d 1247, 1253 n.8 (7th Cir. 1990).  The

Eleventh Circuit has stated that "statistics alone cannot make a case of individual disparate

treatment." *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1131 (11th Cir. 1984).

### Title VII

A plaintiff may prove he was discriminated against on the basis of his race or

national origin in an employment decision by direct evidence, circumstantial evidence, or

16

statistical proof. Even if a Title VII plaintiff does not present direct evidence of discrimination, he may nevertheless present sufficient circumstantial evidence of discrimination to create a jury question. In evaluating Title VII claims based on circumstantial evidence, the court uses the framework established by the United States Supreme Court in *McDonnell Douglas Corp., supra,* and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). Under that framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. at 1824; *Burdine,* 450 U.S. at 253-54 & n. 6, 101 S. Ct. at 1093-94 & n. 6. Once a *prima facie* case has been established, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the challenged employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. at 1824; *Burdine,* 450 U.S. at 254, 101 S. Ct. at 1094. To satisfy the burden of production, the defendant need not persuade the court that it was actually motivated by the proffered reasons, but only need raise a genuine issue of fact as to whether it discriminated against the plaintiff. The employer need only produce admissible evidence which would allow the trier of fact rationally to conclude the employment decision was not motivated by a discriminatory animus. *Burdine,* 450 U.S. at 254-55, 257, 101 S. Ct. at 1094, 1096. If a defendant carries its burden of producing legitimate, non-discriminatory reasons for its decision, the plaintiff is accorded the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id* . at 256,

17

101 S. Ct. at 1095. The Eleventh Circuit has held that disbelief of the defendant's proffered reasons, together with the *prima facie* case, is sufficient circumstantial evidence to support a finding of discrimination. Therefore, "a plaintiff is entitled to survive summary judgment, and judgment as a matter of law, if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997). Further, the Eleventh Circuit has held that once a plaintiff introduces evidence sufficient to permit the factfinder to disbelieve the employer's proffered explanations, summary judgment is inappropriate and the issues of fact and sufficiency of the evidence should be left to the jury. *Id.* at 1530. In summary, the Eleventh Circuit in *Combs* held "once a plaintiff has established a *prima facie* case and has put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions, that alone is enough to preclude entry of judgment as a matter of law." *Id.* at 1532.

In a case alleging failure to promote, the plaintiff must establish a *prima facie* case by showing (1) that he is a member of a protected class, (2) that he applied and was qualified for the job, (3) that despite his qualifications, he was rejected, and (4) that the position remained open or was filled by a person outside the protected class. *Wilson v. AAA Plumbing Pottery Corporation*, 34 F.3d 1024 (11th Cir. 1994); *Welborn v. Reynolds Metals Company*, 810 F.2d 1026, 1028 (11th Cir. 1987).

### APPLICATION OF LAW TO FACTS

#### ADEA Claim

Mr. Atane was born on June 20, 1955. On the date Ms. Carlisle was named as lead podiatry technician, May 5, 1995, Mr. Atane was 39 years old. Because the alleged adverse employment action, the failure to choose Mr. Atane as lead technician, occurred when Mr. Atane was still 39 years old, he cannot maintain a claim for age discrimination based on that action. *See Philippeaux v. North Central Bronx Hospital*, 871 F. Supp. 640 (S.D.N.Y. 1994); 29 U.S.C. § 631. The court notes that although this argument was not raised by defendants in the motion for summary judgment, the protections of the ADEA do not apply to Mr. Atane with respect to the claim presented in this action and judgment as a matter of law is appropriate. Accordingly, defendants' motion for summary judgment with respect to plaintiff's ADEA claim is due to be granted and plaintiff's ADEA claim in this action will be dismissed with prejudice.

#### Title VII

Mr. Atane has not presented any direct evidence of race or national origin discrimination. Nor has he presented statistical evidence to support his claim of discrimination on the basis of race or national origin. Therefore, plaintiff must establish his claim through circumstantial evidence.

Mr. Atane has presented evidence that he is a member of two protected classes in that he is black and from another country, that he was not chosen for lead podiatry technician, and that the person named to the position, Debra Carlisle, was outside the protected classes. However, Mr. Atane has failed to raise a genuine issue regarding

19

whether he applied for the job or that he was qualified for it. The evidence is that Ms. Carlisle's "promotion" to lead podiatry technician was in fact a reclassification based on her existing duties, which she undertook on her own initiative. The reclassification came about during a comprehensive review by Marjorie Cuckler of the job classifications and duties in the Podiatry Department. Mrs. Cuckler's review was pursuant to a contract with UAHSF for marketing and business management. Moreover, the only evidence is that Mr. Atane was not qualified for the lead technician position for several reasons. First, he was a part time employee and a lead position requires full time employment. Though Mr. Atane stated in his deposition he would have been willing to work full time to receive a promotion, there is no evidence that he ever communicated his willingness to Dr. Wilton or others. Second, Mr. Atane disqualified himself from consideration by his expressed salary requirements. He had told Dr. Wilton he was unwilling to work full time for less than approximately $25,000 per year. It is undisputed the lead technician position pays, and Ms. Carlisle earns, less than Mr. Atane is making at present, and that he would not be earning at least $25,000 a year had he been named lead technician. Third, the lead podiatry technician job requires clerical and computer skills that Mr. Atane does not possess.

Because plaintiff has failed to establish a *prima facie* case of race or national origin discrimination, summary judgment for defendants is appropriate. Accordingly, defendants' motion for summary judgment with respect to plaintiff's Title VII and 42 U.S.C. § 1981 claims is due to be granted and the Title VII and § 1981 claims will be dismissed with prejudice.

20

**DONE** this ___/9___ day of May, 1997.

_____

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

21